Keith N. Biebelberg, Esq. (KB-5472)
Biebelberg & Martin
374 Millburn Avenue
Millburn, New Jersey 07041
(973) 912-9888 (PH)
(973) 376-6142 (FAX)
Biebelbergmartin@verizon.net
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TRUSTCASH HOLDINGS, INC., DYLAN CALLUM, TYEE CAPITAL CONSULTANTS, INC., JILL CARASQUERO and KENT CARASQUERO, husband and wife,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**GREGORY MOSS and AYUDA FUNDING CORP.**<br><br>**Defendants.** | Civil Action No. 2:08-cv-05284-KSH-PS<br><br>**SECOND AMENDED COMPLAINT AND REQUEST FOR <u>INJUNCTIVE RELIEF</u>**<br><br>**Jury Trial Demanded** |

Plaintiffs, Trustcash Holdings, Inc. ("Trustcash" or "Company"), Dylan Callum, Tyee Capital Consultants, Inc., Jill Carasquero and Kent Carasquero, husband and wife (collectively, "Shareholder Plaintiffs"), by and through their attorneys of record, Biebelberg & Martin, as local counsel and Gregory Bartko, Esq., of the Law Office of Gregory Bartko, LLC, as co-counsel, hereby file the following as their Second Amended Complaint against the above-named Defendants:

**I. INTRODUCTION**

1. This case involves the fraudulent and illegal distribution of securities, which were not registered pursuant to the Securities Act of 1933 ("Securities Act"), whereby Defendant,

Gregory Moss ("Moss") and Defendant, Ayuda Funding, Corp. ("Ayuda") knowingly engaged in the distribution of approximately 15,000,000 shares of the common stock, par value $.001 per share, of Trustcash ("Shares") into the public markets.

2. Moss resigned as an officer and director of Trustcash in the first quarter of 2008. Prior to and immediately following his resignation, Moss engaged in an unlawful scheme whereby he would flood the over-the-counter public market with the Shares, which he acquired during his tenure as an officer, director and affiliate of Trustcash.

3. In furtherance of his scheme, Moss engaged the assistance of Ayuda, a company engaged in collateralized stock lending, to assist Moss in perpetration of the fraudulent scheme. Through a series of "recourse" loans, Ayuda received no less than 12,000,000 of the 15,000,000 Shares from Moss and, upon information and belief, liquidated the Shares into the over-the-counter public market without registration or an applicable exemption from registration.

4. In reality, the "recourse" loans were actually constructed as a sham to evade the registration requirements of § 5 of the Securities Act of 1933 ("Securities Act") that would otherwise be imposed on the Defendants as participants in the distribution of the Shares and/or as "underwriters" defined within § 2(a)(11) of the Securities Act. Upon information and belief, Ayuda had no intention to pursue collection of the sham loans upon default by Moss and continued its fraudulent activity even though Moss had no intention to and continually did not honor the specific terms of the Loan and Pledge Agreements entered into between the Defendants as a component of the schemes described herein.

5. As a result of the unlawful conduct perpetrated by the Defendants as alleged in this Complaint, Defendants directly and indirectly, have engaged in and, unless restrained and

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com

2

enjoined by this Court, will in the future engage in, transactions, acts, practices, and courses of business that violate §§ 5(a), 5(c), § 12(a)(1) and (2) and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and (c) and 77q(a)]; and §§ 10(b) and 13(d) of the Exchange Act as amended ("Exchange Act") [15 U.S.C. §§ 78j(b), and 77p(a)], and Exchange Act Rule 10b-5 [17 C.F.R. §240.10b-5].

6. Plaintiff, Trustcash, as the original issuer of the Shares, and the Shareholder Plaintiffs, bring this action for damages, disgorgement of Defendants' ill-gotten gains and other relief, including Plaintiffs' request for preliminary injunctive relief and a permanent injunction restraining Defendants from: (i) continuing to distribute unregistered Shares of Trustcash common stock into the public markets, in violation of §§ 5(a), 5(c), § 12(a)(1) and (2) and 17(a) of the Securities Act and in violation of §§ 10(b) of the Exchange Act as amended ("Exchange Act") [15 U.S.C. §§ 78j(b), and 77p(a)], and Exchange Act Rule 10b-5 [17 C.F.R. §240.10b-5] and (ii) granting other equitable relief.

7. Trustcash and the Shareholder Plaintiffs have received written notice from the Company's appointed stock transfer agent, Signature Stock Transfer, Inc. ("Signature"), whereby Moss has demanded the removal of all Rule 144 restrictive legends on Share certificate number 1100 issued to Moss representing 5,437,745 Shares, which are within the total number of Shares Moss originally received from Trustcash as alleged above. Attached hereto as Exhibit "A" is the Demand Transfer Notification received by Trustcash from Signature, which reveals that unless restrained by order of this Court, Signature intended to remove all restrictive legends on the remaining Shares and deliver same to Moss, thus enabling Moss and Ayuda to continue their unlawful scheme to "dump" the Shares into an unsuspecting public marketplace. Since the filing

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com

3

of Trustcash's initial Complaint on October 27, 2008, Trustcash has been advised by Signature that Signature will refuse to process the removal of any restrictive legends that currently exist on the Shares, until this case is fully adjudicated.

8.    As a result of the foregoing, Trustcash and the Shareholder Plaintiffs fear that unless restrained or prohibited by the Court from removing the restrictive legend on Moss' Share certificate number 1100 representing 5,437,745 Shares of Trustcash common stock and further restrained or prohibited from delivering any further unrestricted Shares to Moss pursuant to his demands or pursuant to Ayuda's demands, the Plaintiffs and the public market for the Company's common stock, including the Shareholder Plaintiffs as well as all other Trustcash shareholders, will suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law available to the Plaintiffs.

9.    As a further and continuing result of the foregoing, unless immediately and/or preliminarily restrained by the Court from selling, transferring, pledging, hypothecating or otherwise distributing any and all remaining (unsold) Shares of Trustcash common stock without an effective registration statement filed with the United States Securities and Exchange Commission ("SEC") covering the transfer and resale of the Shares for further transfer or distribution, within the Defendants' beneficial ownership or control, Trustcash and the Shareholder Plaintiffs and all other Trustcash shareholders will suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law available..

## II. JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to §§ 22(a) of the Securities Act [15 U.S.C. § 77u(a)] and § 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa].

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com

4

11.     Venue lies in this Court pursuant to § 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and § 27 of the Exchange Act [15 U.S.C. § 78aa]. Venue also lies in this Court based upon Plaintiff's information and belief that Ayuda's principal office location is within this judicial district and that Moss's state of residence in New Jersey, resulting in both Defendants being citizens of the State of New Jersey for jurisdictional purposes.

12.     In connection with the transactions, acts, practices, and courses of business described in this Second Amended Complaint, including the illegal and unlawful acts and practices by both Defendants acting in concert in the unregistered distribution of the Shares, both Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce, of the mails, and/or of the means and instruments of transportation or communication in interstate commerce.

13.     Upon information and belief, Ayuda continuously and regularly does business within this judicial district and Moss has his residence within this judicial district.  In addition, Defendants conducted unlawful activities, as alleged in this Second Amended Complaint, through the unregistered distribution of the Shares, partially within this judicial district.

### III. THE PARTIES

14.     Gregory Moss ("Moss") is the former chief executive officer and a former member of the board of directors of Trustcash.  Moss assumed those positions as of June 30, 2007 and continued in those positions until Moss was removed involuntarily by a majority vote of the board of directors as Chief Executive Officer of the Company on February 12, 2008. Moss voluntarily resigned as a director of the Company on March 27, 2008.

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: **gbartko@securitieslawcounsel.com** ● **www.securitieslawcounsel.com**

5

15. As of July 17, 2007, shortly after Moss assumed his roles as the Chief Executive Officer and a director of the Company, Moss reported by public filings made with the SEC that he was the beneficial owner of 16,913,959 or 21.8% of the Shares of Trustcash's common stock outstanding at that date. Moss originally acquired these Shares as one of the founders of Trustcash, LLC, which was at the time a subsidiary of the Trustcash. In that regard, Moss received 16,913,959 Shares of Trustcash common stock as the issuer in consideration for his membership interests in Trustcash, LLC, which Shares were delivered to Moss at the time of the exchange of interests contemplated by the Purchase Agreement dated June 30, 2007 as entered into with the members of Trustcash, LLC.[1]

16. As of February 19, 2008, Moss was the record owner of 15,587,745 Shares of Trustcash. Upon information and belief, Moss is a resident and citizen of the State of New Jersey, but maintains a temporary abode at 5601 Riverdale Ave, Apt 1N, Bronx, NY 10471-2122.

17. Ayuda Funding, Corp. ("Ayuda"), a Nevada corporation, holds itself out as a financial advisory firm and independent lender with a focus and specialty on personal loans collateralized by the pledge of publicly-traded equity securities, receivables financing, real estate lending, and legal funding loans. Ayuda has its principal place of business at 135 Kinnelon Rd., Suite 104, Kinnelon, NJ 07405, which is within this judicial district. Ayuda's agent for service of

---

[1] Filed of record with the Securities and Exchange Commission at http://www.sec.gov/Archives/edgar/data/1157688/000122150807000056/ex2_1purchaseagree.htm, reported in the Form 8-K/a filed by Trustcash on July 16, 2007.

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com

6

process is Budget Corp., with its office location at 2050 Russett Way, Carson City, Nevada 89703.

18.     Trustcash Holdings, Inc. ("Trustcash" or "Company") is a publicly traded company, which quotes its common stock in the over-the-counter market on the "Pink Sheets" under the symbol "TCHH," with its principal place of business in the United States located at 3475 Lenox Road, Suite 400, Atlanta, Georgia 30326.  Although at the time of filing its initial Complaint in this action Trustcash filed periodic reports with the SEC under § 13(d) or § 15 of the Exchange Act, Trustcash has since filed a Form 15 with the SEC effectively terminating its obligation to file periodic reports with the SEC under § 12(g) of the Exchange Act..

19.     Kent Carasquero ("Carasquero") is the current Chief Executive Officer and a director of Trustcash as well as a beneficial owner of a substantial amount of the common stock of the Trustcash.

20.     Jill Carasquero, Dylan Callum, and Tyee Capital Consultants, Inc. are all existing shareholders of Trushcash and have suffered damages as a result of Defendants' unlawful conduct described in this Second Amended Complaint and as a result of Defendants' violations of the Federal securities laws.

21.     At all times relevant to the facts, circumstances and actions of the Defendants, as described herein, Moss had sufficient contacts with Ayuda within this judicial district in order to subject Moss to the personal jurisdiction of this Court pursuant to Rule 4:4-4(b)(1) of the Rules Governing the Courts of the State of New Jersey.

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com
7

## IV. FACTS

22.  On February 19, 2008, Signature, the Company's stock transfer agent, processed the cancellation of Share certificate No. 1062 representing 15,587,745 Shares of the common stock of Trustcash and thereafter issued to Moss in replacement, Share certificate numbers: (i) 1082 representing 13,837,745 Shares to Moss; and (ii) Share certificate No. 1081, representing 1,750,000 shares to Ayuda.

23.  The February 19, 2008 Share cancellation and re-issuance arose from a prior private stock lending agreement between Moss and Ayuda, whereby it is alleged upon information and belief that Moss received some specified amount in loan proceeds from Ayuda collateralized by the Shares re-issued as certificate No. 1081 to Ayuda.  Upon further information and belief, some time prior to February 19, 2008, Moss defaulted under the terms of the Ayuda-Moss stock lending agreement enabling Ayuda as the secured party with a secured interest in the Shares to take beneficial ownership of the Shares.

24.  Neither Moss nor Ayuda filed any notification or disclosure report disclosing the beneficial ownership of their Shares with Trustcash or the SEC, thereby masking Defendants' fraudulent scheme from Trustcash's shareholders, from the Shareholder Plaintiffs and from the investing public in general and in violation of several provisions of the Federal securities laws hereinafter detailed.

25.  Further, Moss was aware of his duty to file beneficial ownership reports with the SEC, indicating a change in beneficial ownership of securities, as he had previously filed such a report on June 30, 2007, when he acquired the Shares.

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com

8

26. While structured as a "recourse loan," the applicable agreement between Moss and Ayuda did not provide for personal collection or recourse against Moss nor, upon information and belief, did Ayuda have any bona fide intention to pursue personal collection of the defaulted Moss loan. In fact, even after Moss defaulted on one stock lending arrangement, Ayuda did not pursue any collection and continued to enter into subsequent similar sham lending arrangements with Moss, thereby resulting in the distribution of millions of Shares of Trustcash common stock into the public markets and unsuspecting public market participants, including the Shareholder Plaintiffs and other Trustcash shareholders.

27. Upon information and belief, the unlawful distribution of Shares by Defendants acting in concert resulted in the severe devaluation of Trustcash common stock. In fact, on January 31, 2008, Trustcash traded and closed at over $.10 cents per share. By February 29, 2008, Trustcash common shares traded at less than $.02 cents per share. Such devaluation corresponds with the period of time that Moss and Ayuda acted in concert in their scheme and is matched by a period of excessive and unusual volume in the Company's Shares; including peak volume of trades on Monday, February 25, 2008 where 4,900,000 shares traded and Monday, March 24, 2008 where 5,600,000 shares traded. A chart, representing Trustcash's unusual and extraordinarily high trading volume is attached and incorporated by reference as Exhibit "B".

28. Defendants intentionally and deceptively designed and structured the sham lending agreement(s) between Moss, as a pledgor, and Ayuda, as a pledgee, as a "recourse" loan to take advantage of SEC staff interpretations that enable the holding period for restricted securities owned by a pledgor to be "tacked" to the holding period of the pledgee under Rule 144 of the Securities Act.

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com

9

29. Rule 144, a safe-harbor provision that protects person(s) engaged in a distribution of securities from being deemed to be statutory "underwriters," under § 2(a)(11) of the Securities Act, provides guidelines for the resale of restricted securities and compliance requirements under the Securities Act.  One condition of reliance on Rule 144 is the satisfaction of a specified time of beneficial ownership of a security, or "holding period," to evidence the presumptive investment intent of a beneficial owner of the securities.

30. Under §230.144(d)(3)(ii), and related staff interpretations of the SEC, a pledgee is permitted to use the previous holder's holding period in calculation of his own holding period where it acquired the securities after default on a *bona fide* recourse loan.  Otherwise, in a non-recourse loan, the holding period for the securities must begin anew for the subsequent holder (the pledgee).

31. On March 18, 2008, only 28 days after the initial request, Signature processed an additional Share certificate for Moss and Ayuda.  Moss's Share certificate No. 1082 was re-issued as Share certificate No. 1087, and then re-issued again, on the same date, as three separate Share certificates.  Ayuda was the recipient of the re-issued certificates numbers 1092 and 1093, each Share certificate representing 3,500,000 Trustcash Shares. The remaining 6,837,745 Trustcash Shares were issued back to Moss under Share certificate No. 1094. These requests to transfer and re-issue Shares from Moss to Ayuda were made by Moss in concert with Ayuda as a means of Ayuda unlawfully obtaining beneficial ownership of the Shares for further unlawful distribution.

32. Upon information and belief, Moss and Ayuda have been jointly and severally engaging in a scheme that includes the re-sale of the collateralized Shares prior to Moss's

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com

10

default, or in effect, "short-selling," and thereafter filling (making delivery) the prior re-sales with Moss's collateralized Shares. Furthermore, Plaintiffs upon information and belief contend that the Shares represented by certificate number 1094 have already been pledged as a part of the Defendants' fraudulent scheme and are currently being re-sold or may have already been re-sold into the public markets.

33.     Due to Moss's former positions as a director and executive officer of Trustcash and Moss's reported beneficial ownership of far more than 10% of the outstanding Shares of the common stock of Trustcash, Moss was at all times relevant hereto, a principal shareholder or an "affiliate" for purposes of the Securities Act and, in particular, Rule 144. Moss's affiliate status continued until at least March 27, 2008, meaning that he would not be able to rely on the safeharbor exemption for re-sale of the Shares afforded by Rule 144 since Rule 144 limited Moss's re-sales to no more than 1% of the outstanding shares of the Company's stock every 90 days until June 27, 2008, 90 days after he no longer would have been deemed to be an affiliate of the Company. As reported by Trustcash in its Form 10-Q filed with the SEC for the quarter ended March 31, 2008, At May 20, 2008, the number of shares outstanding of Trustcash's common stock, $0.001 par value (the only class of voting stock), was 82,699,138, meaning that Moss was re-selling Shares unlawfully to the extent that he re-sold Shares in excess of 826,991 (1%) Shares per quarter.

34.     Moss, as aided and abetted by the participation and assistance of Ayuda, effectively re-sold millions of Trustcash Shares into the public markets and as a result of their scheme to evade the requirements of Rule 144, Defendants were deemed to be "underwriters" of the Trustcash Shares at the time of their transfers and re-sales thereof. The market impact of the

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com
11

Defendants' combined actions severely depressed the market capitalization and value for Trustcash stock; deprived the Shareholder Plaintiffs and all other shareholders of the true market value of their holdings; and operated as a major obstruction to the efforts that Trustcash was undertaking to raise further capital. Since Ayuda and Moss acted in concert as alleged herein, the re-sale conditions and limitations imposed upon Moss likewise control any re-distribution of the Shares by Ayuda.

35. Ayuda, in the business of extending loans secured by pledged stock was fully aware that Moss was an affiliate of the Company, as Trustcash was a reporting company under the Exchange Act, and knowingly, or with a reckless disregard, Ayuda violated the Federal securities laws by aiding Moss in dumping his Shares into the public markets.

36. The Defendants' actions in devising the scheme described herein to distribute Shares by Moss to Ayuda and, upon information and belief, into the public markets, without registration was perpetrated with *scienter,* either well aware of the unlawful nature of their distributions or in a manner that was intentionally reckless at a minimum. Defendants' actions were perpetrated with a view towards generating ill-gotten gains or sales proceeds from their unlawful sales of the Shares, which they otherwise would not have been lawfully able to receive.

### FIRST CLAIM FOR RELIEF
**(Violation of Sections 5(a) and (c) and Sections 12(a)(1) and (2) of the Securities Act**
**15 U.S.C. §77e(a) and (c); § 77l(a)(1) and (2)**

37. Paragraphs 1 through 36 are hereby re-alleged and incorporated by reference.

38. The Defendants, directly or indirectly: (a) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities as to which no registration statement was in effect through the use or medium of any prospectus or

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com
12

otherwise; (b) carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities as to which no registration statement was in effect for the purpose of sale or for delivery after sale; or (c) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise securities as to which no registration statement was in effect, or while the registration statement was the subject of a refusal order or stop order or (prior to the effective date of the registration statement).

39. By reason of the foregoing, the Defendants jointly and severally violated, and unless restrained and enjoined by temporary, preliminary and final injunctive orders of the Court, will violate §§ 5(a) and (c) of the Securities Act. Defendants' violations of the registration provisions of the Securities Act likewise gives rise to monetary damages in favor of the Plaintiffs in accordance with §§ 12(a)(1) and (2) of the Securities Act.

**SECOND CLAIM FOR RELIEF**
**(Violation of Section 17(a)(1) of the Securities Act)**
**15 U.S.C. §77q(a)(1)**

40. Paragraphs 1 through 39 are hereby re-alleged and incorporated by reference.

41. Defendants, directly and indirectly, in the offer or sale of the Shares, by use of means or instruments of transportation or communication in interstate commerce or by use of the mails, have employed a device, scheme, or artifice to defraud.

42. By reason of the foregoing, Defendants have jointly and severally violated, and unless restrained and enjoined by temporary, preliminary and final injunctive orders of the Court, will violate § Section 17(a)(1) of the Securities Act.

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com
13

43. Trustcash, as the issuer of the Shares, the Shareholder Plaintiffs and Trustcash shareholders, have been damaged by the Defendants' violations of § Section 17(a)(1) of the Securities Act.

### THIRD CLAIM FOR RELIEF
### (Violation of Section 17(a)(2) and (3) of the Securities Act)
### 15 U.S.C. §77q(a)(2) and (3)

44. Paragraphs 1 through 43 are hereby re-alleged and incorporated by reference.

45. Defendants, directly and indirectly, in the offer or sale of the Shares, by use of means or instruments of transportation or communication in interstate commerce or by use of the mails, have obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or Defendants engaged in transactions, practices, or courses of business which have been or are operating as a fraud or deceit upon purchasers of the Shares. By reason of the foregoing, Defendants have jointly and severally violated and unless restrained and enjoined by temporary, preliminary and final injunctive orders of the Court, will violate §§ 17(a)(2) and (3) of the Securities Act. Trustcash, as the issuer of the Shares, the Shareholder Plaintiffs and Trustcash shareholders, have been damaged by the Defendants' violations of §§ 17(a)(2) and (3) of the Securities Act.

### FOURTH CLAIM FOR RELIEF
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5)
### 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5

46. Paragraphs 1 through 45 are hereby re-alleged and incorporated by reference.

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: **gbartko@securitieslawcounsel.com** ● **www.securitieslawcounsel.com**

14

47.     Defendants have directly and indirectly, with *scienter*, in connection with the purchase or sale of the Trustcash Shares, by use of means or instrumentalities of interstate commerce or by use of the mails, have employed a device, scheme, or artifice to defraud; have made an untrue statement of material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or have engaged in acts, practices, or courses of business which has been and is operating as a fraud or deceit upon purchasers and/or sellers of Trustcash shares of common stock.

48.     Trustcash, as the issuer of the Shares, the Shareholder Plaintiffs and Trustcash shareholders, have been damaged by the Defendants' violations of § 10(b) of the Exchange Act and Rule 10b-5 promulgated there under.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1) Find that Defendants have committed the violations alleged.

2) Enter a preliminary injunctive order in accordance with Rule 65 of the Federal Rules of Civil Procedure, and a permanent injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, enjoining Defendants from violating, directly or indirectly, each of the Federal securities violations alleged in this Complaint.

3) Order the Defendants to pay money damages to all Plaintiffs in an amount to be determined at trial,

4) Required Defendants to disgorge their ill gotten gains,

5) **That a trial by jury be afforded to Plaintiffs on all claims triable thereby**, and

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com
15

6) Grant such other relief as this Court may deem just and proper.

Respectfully submitted this 2nd day of February, 2009.

By: /s/ Keith N. Biebelberg
Biebelberg & Martin
Schoolhouse Plaza
374 Millburn Avenue
Millburn, NJ 07041
Phone: (973) 912-9888
Fax: (973) 376-6142
BiebelbergMartin@verizon.net

/s/Gregory Bartko, Esq.*
GA Bar No. 040476
Law Office of Gregory Bartko, LLC
3475 Lenox Road, Suite 400
Atlanta, GA 30326
(404) 238-0550
(866) 342-4092
gbartko@securitieslawcounsel.com

*Admitted *pro hac vice.*

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com

16